**In The Matter of LACKAWANNA AND WYOMING VALLEY RAILROAD COMPANY, Debtor.**

**No. 10621.**

United States District Court
M. D. Pennsylvania.
Feb. 6, 1959.

Nogi, O'Malley & Harris, Scranton, Pa., for debtor and trustee.

E. M. Watters, Jr., Philadelphia, Pa., for trustee.

James W. Scanlon, David J. Conroy, Scranton, Pa., for Guaranty Trust Co., of N. Y.

Walter L. Hill, Jr., Scranton, Pa., and Blair & Blair, Washington, D. C., for Delaware, Lackawanna & Western R. Co.

Geist & Netter, New York City, for Debenture Bondholders Committee.

Norris, Lex, Hart Eldredge, Philadelphia, Pa., for First Mortgage Protective Bondholders Committee.

Paul Simon, New York City, for individual bondholders.

WATSON, District Judge.

The Plan of Reorganization before the Court was proposed by the Delaware, Lackawanna & Western Railroad Company, hereinafter referred to as the Lackawanna, and approved by the Interstate Commerce Commission, hereinafter referred to as the Commission, by its report and order dated December 6, 1957. (295 I.C.C. 653). The Plan is now before this Court for approval before being submitted to creditors afforded recognition in the Plan for their approval.

### Summary of Plan

The Plan contains all the provisions necessary to meet statutory requirements

and to put the Plan into effect. The only provisions constituting the financial reorganization and the only ones requiring comment by this Court are:

(a) the interests or equities of (1) holders of claims junior to claims secured by the first mortgage, i. e., debenture holders and unsecured creditors, and of (2) holders of the debtors' capital stock, have no value and nothing shall be distributable to them on account thereof.

(b) the capitalization of the reorganized company shall be $1,950,000, consisting of $975,000, principal amount, of general mortgage 4 per cent 50-year income bonds and 9750 shares of common stock having a par value (or without par value or stated value) of $100 per share or if so determined by the reorganization manager, 19,500 shares of common stock having a par or stated value of $50 per share; thus each $1,000 first mortgage bond of the debtor would be exchanged for one $500 income bond and common stock having a par or stated value of $500.

### History of The Debtor

The debtor was reorganized through the merger of the properties of four street car lines, and for many years operated a double track electric railroad providing both freight and passenger service between Scranton and Wilkes-Barre. Due to competition from automobiles and busses revenues from passenger service declined over a period of years, and in 1949 a petition for reorganization under Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, was filed and approved by this Court. Passenger service continued to decline and was finally abandoned at the end of 1952. In 1953 use of electric locomotives was abandoned, and motive power is now provided by a diesel-electric locomotive leased from the Lackawanna. The debtor is now operated as a freight line only and its future earning power depends on developing freight traffic.

Present revenues do not justify a permanent independent operation. During each of the nearly 10 years the debtor has operated under a trustee there has been an operating loss before provision for fixed charges. Success of the Plan of Reorganization therefore depends upon reduction of operating expenses which, it appears from the record, will be possible through control by the Lackawanna. The Commission's report sets out in detail the history of the debtor, a description of the property, present capitalization and debts, proposed plan, and operation under the plan.

### Objections To The Plan

The only objection to the Plan was filed by the trustee under the trust indenture securing the debentures. The specific grounds for objections were (1) operations since abandonment of passenger service do not afford sufficient experience to base a finding of value which would wipe out the claim of the debenture holders, (2) projecting the earnings for only one year does not show the ultimate growth and value after reorganization and the prospective earning power of the railroad, (3) the Commission failed to give any consideration to the reproduction cost, and (4) the Commission failed to give any consideration to the value of the line to the Lackawanna, and (5) the Commission should have determined the value of the debtor's property. In summary, the trustee objects to the Plan because it is based on a valuation which does not permit recognition of the debenture holders. The trustee's counsel did not appear at the hearing before this Court on the Plan and no testimony was offered to support the trustee's objections either before this Court or before the Commission.

The Bankruptcy Act (11 U.S.C.A. § 205, sub. e) provides:

"If it shall be necessary to determine the value of any property for any purpose under this section, the Commission shall determine such value and certify the same to the court in its report on the plan. The value of any property used in railroad operation shall be determined on a basis which will give due consideration to the earning power of

the property, past, present, and prospective, and all other relevant facts. In determining such value only such effect shall be given to the present cost * * * of the property, and the actual investment therein, as may be required under the law of the land, in light of its earning power and all other relevant facts."

■ The Statute has given the Commission the exclusive right to determine value for the purposes of a railroad reorganization. Upon considering approval or disapproval of the Plan of Reorganization the only questions concerning valuation before this Court are whether the Commission's determination of value was supported by material evidence and whether the Commission properly applied the legal standards prescribed in the Statute. Ecker v. Western Pacific R. Corp., 318 U.S. 448, 472, 473, 63 S.Ct. 692, 87 L.Ed. 892.

While the Commission made no specific finding as to value, a finding as to value is implicit in the Commission's findings that the Plan is fair and equitable, affords due recognition to the rights of each claim of creditors and stockholders, and does not discriminate unfairly in favor of any class of creditors and stockholders. The Commission, as stated in its report (p. 662), made no valuation of the debtor's property, but did have before it the investment less depreciation, testimony of a Lackawanna witness estimating cost of reproduction new to be about $12,400,000, cost of reproduction new less depreciation could be about $6,669,000, and net scrap value to be $200,000, and other testimony concerning present and anticipated traffic.

Admittedly the present day reproduction new cost of the tunnels and bridges referred to in the trustee's objections would be far greater than the value of the railroad as a going concern whether before or after reorganization, but that simply means that no one would construct such a line today.

■ It is well settled today, however, that as indicated in the Statute valuation of a property for purposes of a railroad reorganization is primarily based on earning power. Group of Institutional Investors v. Chicago M. St. P. & P. R. Co., 318 U.S. 523, 540, 63 S.Ct. 727, 87 L.Ed. 959. In re Alabama, Tennessee, & Northern R. Corp., D.C., 47 F.Supp. 694 and cases cited therein.

Earning capacity involves a consideration of many factors which will affect the capacity of the property, whatever its intrinsic physical value, to produce earnings, for example, such matters as the expected volume of business, operating costs, the type of commodities to be carried, and the general business conditions of the area to be served. All these matters were considered by the Commission in its report. The Commission's conclusions and approval of the Plan were based upon material, substantial, and uncontroverted evidence and were arrived at in accordance with legal standards. In re Boston & Providence R. Corp., D.C., 143 F.Supp. 866.

### Conclusions

1st. This Court has jurisdiction of the subject matter of these proceedings and of the debtor and its properties, its creditors and stockholders and all other parties having claims against or interests in the debtor or its property.

■ 2nd. The finding of the Commission that the interests of holders of the debtor's 20-year 6 per cent debentures and unsecured claims and the equities of the holders of debtor's preferred and common stocks are of no value and should receive nothing from the debtor's estate is affirmed.

3rd. The finding of the Commission that the equity of the preferred and common stockholders has no value is affirmed, and neither the preferred nor common stockholders should participate in the allocation of new securities to be issued by the reorganized company.

■ 4th. It will be necessary to submit the Plan to the vote only to the holders of claims in Class 4, i.e., holders of 5% first mortgage bonds, of the order dividing creditors and stockholders into

classes dated January 20, 1959, for the reasons that holders of the claims in Classes 1, 2, and 3 of said order will not be adversely or materially affected by the Plan, and holders of claims in Classes 5 and 6 have no value and receive no recognition under the Plan.

5th. The Court is satisfied that:

1. The Plan complies with the provisions of Subsection b of Section 77 of the Bankruptcy Act, is fair and equitable, affords due recognition to the rights of each class of creditors and stockholders, does not discriminate unfairly in favor of any class of creditors or stockholders, and will conform to the requirements of the law of the land regarding the participation of the various classes of creditors and stockholders.

2. The approximate amounts to be paid by the debtor or the reorganized company for expenses and fees incident to the reorganization have been fully disclosed so far as they can be estimated at the date of such hearing, are within such maximum limits as are fixed by the Commission, and are within such maximum limits to be subject to the approval of this Court.

3. The Plan provides for the payment of all cost of administration and all other allowances made or to be made by the Court.

6th. Submission of the Plan to the creditors should not be delayed pending final determination of fees and expenses since it does not appear that the ultimate consummation of the Plan will be affected by the Court's final determination. Such fees and expenses when finally allowed must be paid (except as provided by Statute) prior to consummation of the Plan and discharge of the then trustee and reorganization manager, and the Court so directs.

7th. Objections to the Plan on behalf of the First Pennsylvania Banking & Trust Co., as successor trustee under trust indenture securing debentures are hereby overruled.

### Decree

Wherefore, it is hereby ordered, adjudged, and decreed:

### I.

That this Court has jurisdiction of the subject matter of these proceedings and of the debtor and its property, its creditors and stockholders, and all other parties having claims against the debtor or its property.

### II.

All findings of fact and conclusions made by the Interstate Commerce Commission in the Plan submitted, in the order of the Commission approving the Plan, and in its report of December 5, 1957, referred to in the aforesaid order, and the findings of fact and conclusions of this Court made in its opinion and conclusions this day filed, are hereby adopted as such by this Court with the same force and effect as though herein expressly set out and are specifically approved by this decree.

### III.

The Plan of Reorganization of the debtor as certified to this Court by the Interstate Commerce Commission is hereby approved.

The Clerk of this Court shall forthwith send a certified copy of the Opinion, Conclusions and Decree of the Court to the Interstate Commerce Commission.